**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-24777-CIV-ALTONAGA/Torres**

**QRSKIN USA, INC.**,

Plaintiff,

v.

**APALOO GMBH**, *et al.*,

Defendants.
______________________/

**ORDER**

**THIS CAUSE** came before the Court on Defendants, Apaloo GmbH and Apaloo Corp.'s Motion to Compel Arbitration or, in the Alternative, Motion to Dismiss Pursuant to Rules 12(b)(2) and 12(b)(6) [ECF No. 21], filed August 10, 2026. Plaintiff, QRSkin USA, Inc. filed a Response [ECF No. 23]; to which Defendants filed a Reply [ECF No. 24]. The Court has considered the Complaint [ECF No. 1], the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is denied.

## I. BACKGROUND

***Plaintiff's Allegations.*** This case arises from Apaloo GmbH's termination of Plaintiff's exclusive right to distribute Defendant's products in the United States. (*See generally* Compl.). Apaloo GmbH, a German company whose Managing Director is Andreas Jetter, owns "Moskinto" — a brand of drug- and chemical-free patches that reduce itching and swelling caused by mosquito bites. (*See id.* ¶¶ 2, 11, 33). Before 2020, Apaloo GmbH's distribution was focused on Germany and neighboring countries, and it was looking for a distributor in the United States. (*See id.* ¶ 34).

Plaintiff, a Texas corporation based in Farmers Branch, Texas, became that distributor. (*See id.* ¶¶ 9, 36).

On January 17, 2020, Plaintiff and Apaloo GmbH executed a License and Distribution Agreement (the "Agreement") [ECF No. 1-2], under which Plaintiff became the exclusive U.S. distributor of Apaloo GmbH's "Moskinto" branded products. (*See* Compl. ¶¶ 36–38). Apaloo Corp., a Florida corporation with its principal office in Miami and an officer in Florida, did not sign the Agreement. (*See id.* ¶¶ 10, 28, 31, 37; Agreement 16).[1]

The Agreement establishes a fixed five-year term that renews automatically for two-year periods unless a party gives at least three months' notice before the term expires. (*See* Agreement § 8.1; *see also* Compl. ¶ 42). Section 8.2 gives Apaloo GmbH a "special termination right" if Plaintiff fails to meet escalating annual minimum-turnover figures, and it provides that termination "becomes valid upon receipt by the Licensee." (Agreement § 8.2; *see also* Compl. ¶ 43). Under the Agreement, Plaintiff "does not have a claim to a specific quantity within a specific period[,]" and supply is "done according to availability[.]" (Agreement § 3.1 (alterations added)). Section 9.3 provides that "[a]ll disputes arising out of or in connection with this contract or its validity shall be finally settled in accordance with the Arbitration Rules of the German Arbitration Institute [("DIS")] . . . without recourse to the ordinary courts of law[,]" the seat of arbitration is in Berlin, and "[t]he rules of law applicable to the merits shall be the . . . law of the Federal Republic of Germany[.]" (*Id.* § 9.3 (alterations added); *see also* Compl. ¶ 44).

For more than five years, Plaintiff built Moskinto's U.S. market, placing approximately 19 purchase orders that Apaloo GmbH accepted and filled. (*See* Compl. ¶¶ 2, 45–51). Although the

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

Agreement is with Apaloo GmbH, Apaloo GmbH expressly directed Plaintiff to send its orders to Apaloo Corp., which invoiced the purchases and, as importer of record, managed shipping and importation on Apaloo GmbH's behalf. (*See id.* ¶¶ 84–85). Jetter served as Apaloo Corp.'s President, and Apaloo Corp. conducted business solely for Apaloo GmbH. (*See id.* ¶¶ 82–83). While Plaintiff did not meet the Agreement's minimum-turnover thresholds, before September 2025, Apaloo GmbH never advised Plaintiff that it intended to invoke section 8.2's special termination provision. (*See id.* ¶ 52). On the contrary, in June 2025, Jetter advised that although Plaintiff had not met the purchase minimums, Apaloo GmbH did not intend to terminate the contract. (*See id.*).

In September 2025, Jetter threatened to terminate the Agreement but ultimately did not do so. (*See id.* ¶ 54). Apaloo GmbH instead proposed a new framework that would have ended Plaintiff's exclusive rights, but Plaintiff declined and offered to discuss a "structured buyout[.]" (*Id.* ¶ 56 (alteration added); *see also id.* ¶ 55). Apaloo GmbH then solicited, and Plaintiff placed, a large December 2025 order. (*See id.* ¶¶ 58–59).

In January 2026, at Apaloo GmbH's request, Plaintiff provided its "customer list" and "late-stage pipeline." (*Id.* ¶¶ 60–61). When Plaintiff followed up to confirm receipt, Jetter sent a letter, dated January 20, 2026 and delivered January 27, 2026, invoking section 8.2 and terminating the Agreement. (*See id.* ¶ 62 n.4). The email transmitting the letter invited Plaintiff to "continue working without a formal contract" and "continue placing orders and serving [its] customers under the existing commercial conditions." (*Id.* ¶ 63 (alteration added; quotation marks omitted)).

Defendants delivered the December 2025 order in installments through April 15, 2026, and accepted Plaintiff's final payment on June 10, 2026. (*See id.* ¶ 64). On June 1, 2026, Plaintiff submitted an order for additional Moskinto products, but on June 11, 2026, Apaloo GmbH rejected

it based on the termination. (*See id.* ¶¶ 65, 99). Within weeks of the termination, Defendants allegedly began selling Moskinto products directly to Walmart, with Plaintiff's distributor information removed from the packaging. (*See id.* ¶¶ 69–71). The Moskinto website, which both Defendants operate, advertises the products as available through customer accounts that Plaintiff developed. (*See id.* ¶ 73).

Plaintiff filed this action on July 13, 2026, asserting two claims against Defendants: breach of contract ("Count I") (*see id.* ¶¶ 95–102); and breach of the implied covenant of good faith and fair dealing ("Count II") (*see id.* ¶¶ 103–114). Plaintiff alleges Defendants are "jointly responsible for the material breach of the Agreement" because Apaloo Corp. "is merely an agent through which Apaloo GmbH conducts business, without any semblance of individual identity[.]" (*Id.* ¶ 100 (alteration added); *see also id.* ¶ 112 (alteration added)). Plaintiff alleges that "under German law, Apaloo Corp. joined the Agreement by implied consent through its actions." (*Id.* ¶ 100; *see also id.* ¶ 112).

Plaintiff does not seek damages, "reserv[ing them] for the DIS arbitral tribunal." (*Id.* ¶ 7 (alteration added)). Plaintiff seeks only interim injunctive relief — an order "preserving . . . the parties' exclusive supply relationship" (*id.* (alteration added)) — enforceable "pending the arbitral tribunal's award" (*id.* ¶ 8; *see also id.* 27–28). Plaintiff describes arbitration as "pending and/or imminent[.]" (*Id.* ¶ 7 (alteration added)).

***Defendants' Motion.*** Defendants seek to compel arbitration of Plaintiff's claims and, in the alternative, dismissal. (*See generally* Mot.). Defendants contend the Court lacks personal jurisdiction over Apaloo GmbH. (*See id.* 18–21). They also argue Plaintiff's claims must be arbitrated under section 9.3 of the Agreement, which is governed by the United Nations

Convention on the Recognition and Enforcement of Foreign Arbitral Awards. (*See id.* 6–13). Last, they argue Counts I and II fail to state valid claims for relief. (*See id.* 13–18).

## II. LEGAL STANDARDS

***Federal Rule of Civil Procedure 12(b)(2).*** A plaintiff seeking to establish personal jurisdiction over a nonresident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citations omitted). If the defendant challenges jurisdiction by submitting affidavit evidence, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *See Internet Sols. Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009). Without that evidence from the defendant, the court accepts the complaint's well-pleaded jurisdictional allegations as true. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) ("The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." (citation omitted)).

The inquiry has two steps: "whether personal jurisdiction exists over the nonresident defendant . . . under Florida's long-arm statute," Florida Statute section 48.193, and "if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (citing *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004)). "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." *Madara*, 916 F.2d at 1514.

***Compelling Arbitration.*** The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") is a "multi-lateral treaty that requires courts of a nation state to give effect to private agreements to arbitrate and to enforce arbitration

awards made in other contracting states." *Thomas v. Carnival Corp.*, 573 F.3d 1113, 1116 (11th Cir. 2009) (footnote call number omitted), *abrogated on other grounds by Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1277–78 (11th Cir. 2011). The United States enforces the Convention through Chapter 2 of the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. § 201.

Where an arbitration agreement falls under the Convention, "a court conducts a very limited inquiry." *Chemaly v. Lampert*, 174 F.4th 843, 850 (11th Cir. 2026) (quotation marks omitted; quoting *Various Insurers v. Gen. Elec. Int'l Inc.*, 131 F.4th 1273, 1276 (11th Cir. 2025)). The court asks whether (1) "there is an agreement in writing within the meaning of the Convention"; (2) "the agreement provides for arbitration in the territory of a signatory of the Convention"; (3) "the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial"; and (4) "a party to the agreement is not an American citizen, or [] the commercial relationship has some reasonable relation with one or more foreign states." *Id.* (alteration added; quoting *Various Insurers*, 131 F.4th at 1277). If those prerequisites are met — and none of the Convention's affirmative defenses applies — the court "must order arbitration." *Id.* (quotation marks omitted; quoting *Various Insurers*, 131 F.4th at 1277).

"[A]rbitration is a matter of contract[,] and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (alterations added; quotation marks and citations omitted). The Convention "does not conflict with the enforcement of arbitration agreements by nonsignatories under domestic-law equitable estoppel doctrines." *GE Energy Power Conversion France SAS v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 445 (2020). To determine whether a nonsignatory may invoke an arbitration agreement, courts look to "traditional [state law]

principles" of contract and equity, including "estoppel[.]" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (alterations added; quotation marks and citation omitted).

On a motion to compel arbitration, the allegations of the complaint are accepted as true. *See Int'l Underwriters AG v. Triple I: Int'l Invs., Inc.*, 533 F.3d 1342, 1345 (11th Cir. 2008); *see also DMCC v. Noadiam USA, LLC*, 297 F. Supp. 3d 1321, 1327 n.3 (S.D. Fla. 2017) (same).

***Federal Rule of Civil Procedure 12(b)(6).*** "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss, a court construes the complaint "in a light most favorable to the plaintiff" and takes its factual allegations as true. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citation omitted).

## III. DISCUSSION

The Court first addresses whether it has personal jurisdiction over Apaloo GmbH. It then turns to Defendants' request to compel arbitration and the alternative request for dismissal under Rule 12(b)(6).

### A. Personal Jurisdiction

Defendant, Apaloo GmbH contends it is not subject to general personal jurisdiction in Florida.[2] (*See* Mot. 18–21). Defendants acknowledge the Court cannot reach Apaloo GmbH's request to compel arbitration unless it has personal jurisdiction over Apaloo GmbH. (*See id.* 9 n.4); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (explaining personal jurisdiction is "'an essential element of the jurisdiction of a district . . . court,' without which the

[2] Apaloo Corp. does not contest personal jurisdiction. (*See generally* Mot.).

court is "'powerless to proceed to an adjudication'" (alteration in original; quotation marks and citation omitted)); *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999) ("A court without personal jurisdiction is powerless to take further action." (citations omitted)).

As a threshold matter, Plaintiff invokes only general jurisdiction over Apaloo GmbH under Florida Statute section 48.193(2). (*See* Compl. ¶ 29). In its Response, Plaintiff maintains general jurisdiction exists but contends the Court also has *specific* jurisdiction, because Apaloo GmbH, through Apaloo Corp., operates and conducts business in Florida, and Plaintiff's claims arise from those business transactions. (*See* Resp. 7–10). Defendants insist that the jurisdictional allegations are conclusory and that Apaloo GmbH's contacts cannot be established through the conduct of its subsidiary. (*See* Reply 5–6). They also contend the acts giving rise to Plaintiff's claims occurred in Germany. (*See id.* 6–7).

That Plaintiff invokes only the state-law provision for general jurisdiction in its Complaint does not preclude the Court from addressing specific jurisdiction. "[I]t is the facts and substance of the claims alleged, not the jurisdictional labels attached, that ultimately determine whether a court can hear a claim." *DeRoy v. Carnival Corp.*, 963 F.3d 1302, 1311 (11th Cir. 2020) (alteration added; citations omitted); *see also Trepko, Inc. v. Golden W. Trading, Inc.*, No. 20-cv-464, 2021 WL 424347, at *4 (M.D. Fla. Feb. 8, 2021) (examining specific jurisdiction under the long-arm provisions identified in the plaintiff's response, where the complaint did "not specifically allege the basis under Chapter 48, Florida Statutes, in which the court's personal jurisdiction [was] invoked" (alteration added; citation omitted)); *cf. Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam) (explaining the federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted" (citations omitted)).

The Court therefore considers Plaintiff's specific jurisdiction theory asserted in its Response (*see* Resp. 7–8, 10), which relies on facts alleged in the Complaint and which Defendants had the opportunity to address (*see* Reply 6–7). For the following reasons, the Court does not decide whether general jurisdiction exists, as it finds it has specific personal jurisdiction over Apaloo GmbH.

**1. Florida's Long-Arm Statute**

a. <u>Agency-Based Specific Jurisdiction</u>

***Section 48.193(1)(a).*** "Under Florida's long-arm statute, a court may exercise specific personal jurisdiction over a nonresident defendant who engaged in one of the enumerated acts listed under Florida Statute section 48.193(1)(a)." *Miller v. Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365, 1371 (S.D. Fla. 2019) (citing *Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 790 (11th Cir. 2017) (per curiam)). The statute confers specific jurisdiction where the claim "arises from the defendant's forum-related contacts . . . [,] and those contacts fall within one of nine statutorily enumerated categories." *Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1239 (S.D. Fla. 2015) (alterations added; citation omitted).

The statute "expressly provides a defendant's contacts may be based not only on the defendant's personal activities, but also on the actions of the defendant's agents." *Id.* (citation omitted). Florida's long-arm statute is strictly construed. *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (citation omitted). General allegations that a defendant conducts substantial business in the state do not suffice to plead specific jurisdiction. *See Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (distinguishing specific jurisdiction under section 48.193(1)(a), which extends to "suits that arise out of or relate

to a defendant's contacts with Florida," from general jurisdiction under section 48.193(2), which rests on "substantial and not isolated activity" in Florida (quotation marks and citations omitted)).

Plaintiff relies on the first of the long-arm statute's enumerated acts. (*See* Resp. 7–8). Under section 48.193(1)(a), a person "who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from" those acts, including "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." *Id.* (alterations added).

***Imputing Jurisdictional Contacts.*** A foreign parent corporation is generally not subject to the jurisdiction of a forum state, "merely because a subsidiary is doing business there." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002) (citation and footnote call number omitted). But imputing a subsidiary's contacts to the foreign parent — thereby potentially subjecting the parent to personal jurisdiction — may still be appropriate "if the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or [the subsidiary's] separate corporate status is formal only and without any semblance of individual identity[.]" *Id.* (alterations added; quotation marks and citation omitted). These principles extend beyond mere parent-subsidiary relationships; for instance, they reach "affiliated parties" when "the resident corporation acts on behalf of those foreign affiliates." *Id.* at 1273 (citing *United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 987 F.2d 39, 45, 48 (1st Cir. 1993); *Pappalardo v. Richfield Hosp. Servs., Inc.*, 790 So. 2d 1226, 1228 (Fla. 4th DCA 2001)).

The inquiry into agency-based personal jurisdiction focuses on a parent entity's "[o]perational control" over a subsidiary, meaning "the day-to-day control of the internal affairs or basic operations of the subsidiary." *Yellow Pages Photos, Inc. v. Ziplocal, LP*, No. 12-cv-755,

2012 WL 5830590, at *3 (M.D. Fla. Nov. 16, 2012) (alteration added; citing *Enic, PLC v. F.F. S. & Co.*, 870 So. 2d 888, 891–92 (Fla. 5th DCA 2004)). The parent's control "must be high and very significant." *Enic*, 870 So. 2d at 891 (citing *State v. Am. Tobacco Co.*, 707 So. 2d 851, 851 (Fla. 4th DCA 1998)). For the subsidiary to be more than a "mere instrumentalit[y,]" it must have "separate corporate interests of its own[,]" meaning it does not "function[] solely to achieve the purpose of the dominant corporation." *Meier*, 288 F.3d at 1273 (alterations added; quotation marks omitted; quoting *Am. Tobacco Co.*, 707 So. 2d at 855; discussing *Universal Caribbean Establishment v. Bard*, 543 So. 2d 447, 448 (Fla. 4th DCA 1989)).

b. <u>Plaintiff Satisfies the Long-Arm Statute.</u>

Plaintiff's allegations satisfy both requirements of section 48.193(1)(a)(1), as Apaloo GmbH carried on business in Florida through an agent, and Plaintiff's claims arise from that business.

***Agency.*** First, Plaintiff's well-pled allegations establish that Apaloo GmbH, through an agent, carried on a business in Florida under section 48.193(1)(a)(1). To carry on a business for purposes of the statute, a defendant's activities, "considered collectively[,]" must "show a general course of business activity in the state for pecuniary benefit." *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (alteration added; quotation marks omitted; quoting *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (per curiam)). Plaintiff alleges Apaloo GmbH "directed" it to send its purchase orders to Apaloo Corp., which invoiced the purchases (*see* Compl. ¶ 84); Apaloo Corp. served as importer of record and, on Apaloo GmbH's behalf, managed the shipping, importation, and transportation of the products Plaintiff purchased (*see id.* ¶ 85); Jetter served both as Managing Director of Apaloo GmbH and President of Apaloo Corp. (*see id.* ¶ 83); and — significantly — "[t]he amount

of control exercised by Apaloo GmbH over Apaloo Corp. was very significant in that Apaloo Corp. conducted business *solely for* Apaloo GmbH" (*id.* ¶ 82 (alteration and emphasis added)).

These allegations describe the kind of agency the long-arm statute contemplates. *See, e.g.*, *Marti v. Iberostar Hoteles y Apartamentos S.L.*, No. 20-20078-Civ, 2025 WL 253991, at *5–6 (S.D. Fla. Jan. 17, 2025) (imputing to a Spanish parent company the Florida contacts of its affiliates, which existed "only to" conduct the parent's business and operated the parent's booking website and call center under a license to its trademarks (quotation marks omitted)). By contrast, courts decline to impute contacts where, unlike here, the foreign defendant sells through multiple independent distributors, or where the plaintiff cannot rebut evidence that the parent did not direct the affiliate's Florida activities. *See, e.g.*, *Lauzon v. Joseph Ribkoff, Inc.*, 77 F. Supp. 2d 1250, 1254 (S.D. Fla. 1999) (finding no jurisdiction under section 48.193(1)(a) where a Canadian manufacturer's goods were "re-sold by wholly independent contractors[;]" and it had "no officers, affiliates, employees or agents in Florida" (alteration added; citation omitted)); *Hard Candy*, 106 F. Supp. 3d at 1246 (declining to impute a subsidiary's Florida contacts where the plaintiff did not rebut evidence that the subsidiary never sought its parent's approval to market or sell in Florida).

Although the Complaint does not specify where Apaloo Corp. performed the described activities, that omission alone does not defeat jurisdiction. *Cf. ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1345 (11th Cir. 2025) (stating court was required to "piece together other allegations" — such as the timing of a company's relocation of its headquarters to Florida and whether its officer worked there — to determine whether the relevant conduct could reasonably be inferred to have occurred in Florida (citation omitted)). Plaintiff alleges Apaloo Corp. is a Florida corporation with its principal office in Miami and an officer in Florida, and that "at all relevant times" it conducted business in Florida. (*See* Compl. ¶¶ 10, 28, 31). These facts,

combined with specific allegations of Apaloo Corp.'s purchase invoices and extensive management of shipments, imports, and transportation (*see, e.g.*, *id.* ¶¶ 84–85), support the reasonable inference that the relevant activities were performed in Florida. *Cf. Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010) (explaining that a corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities").[3] Thus, Plaintiff alleges that Apaloo GmbH carried on its U.S. business in Florida through its agent, Apaloo Corp.

***Arising-From.*** Second, the long-arm statute also requires that the cause of action "aris[e] from" those acts. Fla. Stat. § 48.193(1)(a) (alteration added). Defendants argue that termination of the Agreement and the refusal to fill Plaintiff's June 2026 order were decisions Apaloo GmbH made in Germany. (*See* Reply 6–7). Again, the Court is not persuaded.

Apaloo GmbH itself directed Plaintiff to submit its purchase orders to Apaloo Corp., a Florida company with its principal place of business in Miami. (*See* Compl. ¶¶ 10, 84). The parties performed the Agreement through Apaloo Corp. for more than five years, and Plaintiff submitted its June 1, 2026 order — the order Apaloo GmbH refused — through that same channel. (*See id.* ¶¶ 51, 65, 84–85, 99; *see also* Ricaud Decl. ¶ 37 (attesting Plaintiff placed the June 1, 2026 order "with Apaloo GmbH *and* Apaloo Corp." (emphasis added))). A claim that a defendant breached an agreement by refusing to fill an order submitted through its Florida operation necessarily arises from the operation of that business in Florida. *See Citicorp Ins. Brokers (Marine), Ltd. v. Charman*, 635 So. 2d 79, 82 (Fla. 1st DCA 1994) (explaining "arising from" "is broad; it does not mean

[3] The Declaration of Plaintiff's General Manager, Rodrigo Ricaud ("Ricaud Decl.") [ECF No. 12-1], is consistent with that inference. He describes Apaloo Corp. as "Apaloo GmbH's Florida-based affiliate[.]" (*Id.* ¶ 21 (alteration added)). Plaintiff filed the Declaration in support of its earlier motion for a preliminary injunction [ECF No. 12] and cites the Declaration in its Response. (*See* Resp. 2, 7, 10, 12).

'proximately caused by,' but only requires a 'direct affiliation,' 'nexus,' or 'substantial connection' to exist between the basis for the cause of action and the business activity" (quotation marks and citation omitted)).

**2. Due Process**

a. The Due Process Framework

***Three-Pronged Test.*** The Due Process Clause allows the exercise of specific jurisdiction over a nonresident defendant where (1) the plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum; (2) the defendant "purposefully availed" itself of the privilege of conducting activities in the forum; and (3) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Louis Vuitton*, 736 F.3d at 1355 (quotation marks omitted; quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, 474–75 (1985); other citations omitted). The plaintiff bears the burden of establishing the first two prongs, "and if the plaintiff does so, 'a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.'" *Id.* (quotation marks omitted; quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)). Moreover, when a plaintiff relies on the forum conduct of a defendant's agent, a threshold question — separate from the long-arm statute's reference to agents — is whether attributing that conduct to the defendant comports with due process.

In *Meier*, a general-jurisdiction case, the Eleventh Circuit held the Florida activities of subsidiaries could be attributed to their foreign parents. *See Meier*, 288 F.3d at 1272–74. Twelve years later, in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), the Supreme Court held that a subsidiary's in-state contacts could not support general jurisdiction over its foreign parent under an agency test that asked whether the subsidiary performed services "important" to the parent.

*Id.* at 135. Notably, the Supreme Court did not reject agency principles altogether; it declined to "pass judgment on invocation of an agency theory in the context of general jurisdiction," and noted that "[a] subsidiary . . . might be its parent's agent for claims *arising in* the place where the subsidiary operates[.]" *Id.* (alterations and emphasis added). Since *Daimler*, the Eleventh Circuit has held that "*Meier* is binding" and has applied its attribution principle to specific jurisdiction, reasoning that "when a defendant exerts a high degree of control over an entity, the contacts created by the entity are, in reality, created by the defendant." *United States ex rel. Bibby v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1355 (11th Cir. 2021) (citation omitted).

b. Exercising Jurisdiction Comports with Due Process.

As explained below, exercising jurisdiction over Apaloo GmbH comports with due process, because Apaloo Corp.'s Florida contacts are attributable to Apaloo GmbH, Plaintiff's claims arise from those contacts, Apaloo GmbH purposefully availed itself of Florida, and jurisdiction is fair and reasonable.

***Attribution of Contacts.*** To start, Defendants principally argue that Apaloo GmbH's contacts with Florida cannot be established through Apaloo Corp. (*See* Mot. 18–21; Reply 5–7). They rely on *Daimler*, which they contend forecloses *Meier*'s agency-imputation analysis. (*See* Reply 6). The Court disagrees. *Daimler* concerned general jurisdiction and left open the use of agency principles for claims arising in a jurisdiction where the agent operates. *See Daimler*, 571 U.S. at 135; *see also Marti*, 2025 WL 253991, at *4 n.2 (noting that "*Daimler* involved general, rather than specific, jurisdiction"). Further, the Eleventh Circuit in *Bibby* confirmed that *Meier*'s attribution principle continues to govern specific jurisdiction. *See Bibby*, 987 F.3d at 1355–56.

The same facts that establish agency under Florida's long-arm statute also support attributing Apaloo Corp.'s Florida contacts to Apaloo GmbH for purposes of due process. (*See*

Compl. ¶¶ 81–87, 100, 112). Defendants characterize these allegations as conclusory. (*See* Reply 5). Not so.

Plaintiff supports its allegation of "day-to-day control" (Compl. ¶ 81) with specific facts. Further, Defendants offer no evidence contesting Plaintiff's assertions. (*See generally* Mot.; Reply). Plaintiff's allegations are therefore accepted as true. *See Madara*, 916 F.2d at 1514. And because the Complaint's allegations show the "high degree of control" that makes the contacts of Apaloo Corp. in reality contacts created by Apaloo GmbH, attributing those contacts to Apaloo GmbH comports with due process. *See Bibby*, 987 F.3d at 1355.

***Relatedness.*** The first prong of the due process inquiry asks whether the claims "arise out of or relate to" the defendant's forum contacts — that is, whether there is "a sufficient nexus between those contacts and the litigation." *Diamond Crystal*, 593 F.3d at 1267; *see also Louis Vuitton*, 736 F.3d at 1355. The first half of that standard asks about causation, while the second "contemplates that some relationships will support jurisdiction without a causal showing" — although the phrase "relate to" still "incorporates real limits[.]" *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021) (alteration added; quotation marks omitted).

Plaintiff's claims satisfy the first half, as they arise out of the Florida contacts attributed to Apaloo GmbH. The orders at issue were placed with Apaloo Corp. in Florida; Apaloo Corp. invoiced them and handled the importation and shipments until June 2026. (*See* Compl. ¶¶ 64–65, 84–85). The alleged breaches are Apaloo GmbH's termination of that relationship and its refusal of an order submitted through it. (*See id.* ¶¶ 99, 111); *see also Diamond Crystal*, 593 F.3d at 1267–69 (concluding that a seller's claim for nonpayment "grew out of" a nonresident buyer's purposeful contacts with Georgia, where "each individual transaction involved meaningful contact with Georgia" and the buyer engaged in 14 such transactions in six months); *Del Valle v. Trivago*

*GmbH*, 56 F.4th 1265, 1275 (11th Cir. 2022) (finding that claims arose "at least in part directly out of" foreign booking companies' Florida contacts, which included "the use of [their] websites by some Florida residents to book accommodations" at the hotels at issue (alteration added)).

Defendants' contention that the termination and the refusal were decided in Germany does not alter the analysis. (*See* Reply 6–7). The due-process relatedness inquiry looks to the connection between the defendant's forum contacts and the claims — here, performance of the Agreement in and through Florida — not to where the defendant decided to take the action alleged to be a breach. *See Diamond Crystal*, 593 F.3d at 1268 (explaining that in contract cases, courts focus on "the substance of the transaction," including "the actual course of dealing" (citation omitted)).

***Purposeful Availment.*** The second prong asks whether Apaloo GmbH purposefully availed itself of the privilege of conducting activities in Florida. A defendant who structures its U.S. sales to run through a Florida entity it controls, for several years, has "deliberately engaged in significant activities within a state[.]" *Diamond Crystal*, 593 F.3d at 1268 (alteration added). Based on the Complaint's allegations, Apaloo GmbH did not merely sell into Florida — it established and directed a Florida entity to conduct its U.S. business. (*See* Compl. ¶¶ 81–87); *see, e.g.*, *Marti*, 2025 WL 253991, at *10 (finding foreign hotel company purposefully availed itself of doing business in Florida through bookings on a website its affiliate operated on its behalf). Apaloo GmbH therefore purposefully availed itself of the privilege of conducting business in Florida.

***Fair Play and Substantial Justice.*** The final prong asks whether exercising jurisdiction comports with "traditional notions of fair play and substantial justice." *Louis Vuitton*, 736 F.3d at 1355 (quotation marks and citation omitted). In making that assessment, courts consider "the

burden on the defendant"; "the forum's interest in adjudicating the dispute"; "the plaintiff's interest in obtaining convenient and effective relief"; and "the judicial system's interest in resolving the dispute." *Id.* at 1358 (quotation marks omitted; quoting *Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008)); *see also Burger King*, 471 U.S. at 477.

Defendants contend that requiring Apaloo GmbH to litigate in Florida "would impose a substantial burden while advancing little legitimate forum interest." (Mot. 21). But their argument rests on the asserted absence of suit-related conduct by Apaloo GmbH in Florida — arguments the Court has rejected.

In any event, the relevant considerations favor jurisdiction. Florida has an interest in claims concerning that business activity, and Plaintiff has an interest in obtaining effective relief in the forum where the contract was performed. Considering these observations, Defendants have not made the "compelling case" necessary to establish that exercising jurisdiction would be unreasonable. *Louis Vuitton*, 736 F.3d at 1355 (quotation marks and citation omitted). In sum, the Court has specific personal jurisdiction over Apaloo GmbH.

**B. Compelling Arbitration and Interim Relief**

Next, Defendants' request to compel arbitration presents two distinct issues: one, whether the four prerequisites for arbitration under the Convention are satisfied; and two, whether Plaintiff's request for interim relief itself must be submitted to the arbitral tribunal. Although the parties agree the merits of Plaintiff's case belong in arbitration, the present record does not permit a finding whether Plaintiff's requested interim relief is properly before the Court.

**1. The Convention Prerequisites Are Uncontested.**

Defendants contend each of the Convention's prerequisites is met. Those prerequisites are a written agreement to arbitrate that provides for arbitration in the territory of a Convention

signatory, that arises out of a commercial legal relationship, and that involves either a party that is not an U.S. citizen or a relationship with some reasonable relation to a foreign state. *See Chemaly*, 174 F.4th at 850. Defendants argue that section 9.3 of the Agreement is a written agreement to arbitrate; it provides for arbitration in Berlin, Germany, a Convention signatory; it arises from a commercial licensing and distribution relationship; and Apaloo GmbH is a German entity. (*See* Mot. 6–8). Further, Defendants argue Apaloo Corp. — which did not sign the Agreement — may still enforce section 9.3 through "[e]quitable estoppel" because Plaintiff's claims against it rely on the Agreement's terms and its allegedly concerted misconduct with Apaloo GmbH. (*Id.* 9 (alteration added; citing *Chemaly*, 174 F.4th at 856); *see also id.* 10).

Plaintiff does not dispute any of this. It states it "has never resisted arbitration of the merits[,]" which the Complaint reserves to the DIS tribunal. (Resp. 13 (alteration added); *see* Compl. ¶ 7). Nor does Plaintiff address Defendants' arguments pertaining to equitable estoppel, and it does not contest that the Convention's prerequisites are met. (*See generally* Resp.; *see also* Reply 2). Plaintiff merely contends "there is nothing for this Court to compel to arbitration" because it seeks only interim relief — not resolution of the merits. (Resp. 14). There is thus no dispute that the merits of Plaintiff's claims belong in arbitration in Germany.

**2. The Record Is Unclear Whether Interim Relief Belongs in Arbitration.**

The central dispute lies in Defendants' request to compel arbitration not only of the merits but also of Plaintiff's request for interim relief. Defendants argue the injunction Plaintiff seeks — which would require Defendants to disregard the January 2026 termination and accept and fill new purchase orders — is not interim relief at all, but "the final relief of the arbitration, awarded in advance and without the tribunal." (Reply 3; *see also* Mot. 10–12). They add that Article 25.3 of the DIS Rules, while preserving "the jurisdiction of a competent court to grant genuinely interim

or conservatory relief in aid of arbitration," does not permit a court to award in advance the contractual performance the parties already committed to arbitration. (Reply 3; *see also* Mot. 11–12). Plaintiff insists that the DIS Rules preserve its right to seek interim measures from a court. (*See* Resp. 12–13).

Without knowing whether arbitration has even begun, the undersigned is hard-pressed to decide whether Plaintiff's request for interim relief is properly before the Court. The filings neither answer that question nor are they consistent. To begin, the Complaint describes the German arbitration as "pending and/or imminent." (Compl. ¶¶ 7, 88). But Plaintiff's prayer for relief seeks an injunction "in aid of the imminent arbitration" rather than a "pending" one. (*Id.* 27).

In its Response, Plaintiff still does not confirm whether it has commenced an arbitration or clarify the expected duration of the requested relief. Plaintiff simply describes the only dispute before the Court as "the availability of interim relief while the arbitral tribunal is constituted." (Resp. 13–14; *see also* Compl. 27 (seeking an injunction "pending the arbitral tribunal's final determination")). Pressing the point, Defendants observe the Complaint "is not clear whether [Plaintiff] has even commenced an arbitration before DIS" (Mot. 11 (alteration added)), and they argue that Plaintiff "still will not disclose whether it has commenced the arbitration" (Reply 2). Defendants even describe the arbitration as one Plaintiff "has apparently failed to commence." (*Id.* 3).

These uncertainties bear on whether, and for how long, judicial relief is necessary. And Plaintiff's contention that a party may request interim or conservatory measures from a competent court "at any time, independent of the arbitration" does not resolve those questions. (Compl. ¶ 8 n.1). Courts considering interim relief in aid of arbitration look to where the arbitration stands, as such relief generally preserves the status quo until the arbitral tribunal can act. *See Toyo Tire*

*Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 979–80 (9th Cir. 2010) (distinguishing a request for relief "while the parties are waiting for the arbitration panel to be formed" from a case in which "the arbitral tribunal had the power to grant the injunctive relief" the movant sought (citing *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725–26 (9th Cir. 1999))); *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 527 (7th Cir. 1997) (describing injunctions in aid of arbitration "to last just long enough to allow a request for injunctive relief to be referred to the arbitral tribunal" (citation omitted)). Notably, the rules the parties incorporated into the Agreement authorize the arbitral tribunal itself to order interim or conservatory measures. *See* German Arbitration Inst., Arbitration Rules art. 25.1 (2018).

If the arbitration is underway, the tribunal may be positioned to address Plaintiff's request. If it is not, the question becomes whether the relief Plaintiff seeks is genuinely "interim" or, rather, the final relief the parties originally committed to — and agree belongs in — arbitration. (*See* Reply 3; Mot. 11–12). Because the present record does not permit the Court to resolve these questions, the Court denies Defendants' request to compel arbitration without prejudice to refiling after the status of arbitration is confirmed.[4]

**C. Failure to State a Claim**

Lastly, Defendants alternatively argue Counts I and II fail to state claims. (*See* Mot. 13–17). That argument is not ripe for decision either. Whether the Court needs to reach it depends on whether the dispute must proceed in arbitration, a question the Court cannot resolve.

---

[4] *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997) (recognizing that "district courts enjoy broad discretion in deciding how best to manage the cases before them" (citation omitted)); *cf. Taylor v. Pilot Corp.*, 955 F.3d 572, 579 (6th Cir. 2020) (describing a without-prejudice denial of a motion to compel arbitration as "a purely ministerial order, serving housekeeping or docket management purposes" (citation omitted)). This Order does not decide whether any claim or request for relief must be arbitrated, or whether Plaintiff may obtain interim relief from the Court.

If the dispute belongs in arbitration, its merits are for the arbitrator, not the Court. *See AT&T Techs.*, 475 U.S. at 649 ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." (alteration added)); *Integrated Sec. Servs. v. Skidata, Inc.*, 609 F. Supp. 2d 1323, 1326 n.7 (S.D. Fla. 2009) (declining to address alternative Rule 12(b)(6) arguments where "the case should proceed in arbitration"). The Court therefore denies Defendants' Rule 12(b)(6) request without prejudice.

## IV. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendants, Apaloo GmbH and Apaloo Corp.'s Motion to Compel Arbitration or, in the Alternative, Motion to Dismiss Pursuant to Rules 12(b)(2) and 12(b)(6) **[ECF No. 21]** is **DENIED**.
   a. Defendant, Apaloo GmbH's request to dismiss Plaintiff's claims for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) is **DENIED**.
   b. Defendants' request to compel arbitration and alternative request to dismiss under Federal Rule of Civil Procedure 12(b)(6) are **DENIED without prejudice**.
2. No later than October 13, 2026, Plaintiff shall file a notice stating whether it has commenced an arbitration before the German Arbitration Institute and, if it has, the status of that proceeding, including whether an arbitral tribunal has been constituted.
   a. If the arbitration has begun, Plaintiff shall explain why it cannot seek the requested interim relief from the arbitral tribunal.
   b. If the arbitration has not begun, Plaintiff shall explain the basis for the delay in constituting a tribunal and why it is nevertheless entitled to interim relief here.

3. Defendants shall file a response within **14 days** of Plaintiff's notice. Plaintiff may file a reply within **seven days** of Defendants' response.

**DONE AND ORDERED** in Miami, Florida, this 6th day of October, 2026.

Cecilia M. Altonaga

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**